UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KATHIANN M. WILSON,                )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        No. 3:13-CV-579
                                   )        (MATTICE/GUYTON)
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social Security,  )
                                   )
        Defendant.                 )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and

Memorandum in Support [Doc. 15 & 16] and Defendant's Motion for Summary Judgment and

Memorandum in Support [Docs. 20 & 21]. Plaintiff Kathiann M. Wilson seeks judicial review

of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant

Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On November 9, 2010, Plaintiff protectively filed a Title II and Title XVIII application

and a supplemental Title XVI and XIX application with an alleged onset date of July 21, 2010.

[Tr. 121-33; 154]. The Social Security Administration denied Plaintiff's application initially and

upon reconsideration. [Tr. 63-66; 69-72]. Plaintiff timely filed a request for a hearing, and she

appeared before Administrative Law Judge, James Dixon, on April 24, 2012 in Knoxville,

Tennessee. [Tr. 75; 36]. The ALJ issued an unfavorable decision on May 22, 2012. [Tr. 13-32].

Plaintiff filed her appeal of the decision, which the Appeals Council declined to review on

August 6, 2013. [Tr. 6-12; 1-5].

Having exhausted her administrative remedies, Plaintiff filed a complaint with this Court on September 30, 2013, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since July 21, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: *a bipolar affective mood disorder, not otherwise specified; and a borderline personality disorder* (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is able to complete simple two – to three-step commands. She is able to maintain attention and concentration for at least two hours at a time, as required to perform simple tasks sufficiently and to complete an eight-hour workday/40-hour workweek. She is able to interact appropriately with others on a consistent basis; however, contact with others should be casual, and supervision should be direct and non-confrontational. She is able to adapt to routine changes and to respond to direction from others. Changes in the working environment should be gradually introduced.

2

6. The claimant is capable of performing past relevant work as a Box Stacker/Packer (factory environment). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, since July 21, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 18-27] (emphasis in the original).

## II.     DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

3

1.   If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and

4

must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.  See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).  The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on

5

the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    EVIDENCE

### A.    *Medical Evidence*

On November 9, 2010, Plaintiff protectively applied for disability insurance benefits from the Social Security Administration, with an alleged onset date of July 21, 2010. [Tr. 121-33; 54]. Plaintiff has past relevant work experience as a cashier and factory worker. [Tr. 157]. She completed the twelfth grade and, in her Disability Report, stated that she did not attend special education classes. [Tr. 166-67]. However, during an administrative hearing, Plaintiff stated that she graduated with a special education diploma and that during high school she attended special education classes "most of the day" along with a "couple of regular classes." [Tr. 49]. She reported that she ceased working due to her conditions of anxiety, epilepsy, and depression. [Tr. 166]. In support of her alleged mental deficiencies, Plaintiff submitted her high school academic record and standardized testing scores. [Tr. 231-32].

Dr. H. Abraham Brietstein conducted a psychological evaluation on July 3, 2002 and diagnosed Plaintiff with attention deficit disorder/hyperactivity disorder, dysthymic disorder, panic disorder without agoraphobia, and borderline intellectual functioning. [Tr. 310-314]. He conducted a Wechsler Adult intelligence Scale-III IQ test ("WAIS-III") and found that Plaintiff

6

had a full scale IQ of 70.  [Tr. 311].  He noted that Plaintiff "has difficulty interacting with other people and difficulty handling jobs.  She has for the most part been over-protected and coddled by her family and needs a great deal of encouragement to try something new."  [Tr. 313].  He stated that Plaintiff would be a "reasonable candidate for beauty or cosmetology school though she is likely to have difficulty passing any written tests at the completion of her course work" . . . and that she was "inconsistent about participating in treatment[.]"  [Id.].

In 2004, Plaintiff was admitted to Lakeshore Mental Health Institute ("Lakeshore") for threatening suicide.  [Tr. 239-44].  Plaintiff claimed that she suffered from panic attacks each month, she often experienced suicidal ideations, and had a habit of superficial cutting.  [Tr. 240].  Plaintiff was diagnosed with depressive disorder, rule out post-traumatic stress disorder, and rule out borderline personality disorder.  [Tr. 243].  She was discharged with a fourteen-day prescription to Prozac, Albuterol, and Trazodone and noted to have no limitations on activity.  [Tr. 242].

Plaintiff sought psychiatric treatment off and on at Cherokee Health Systems ("CHS") from May 15, 2008 through March 7, 2012.  [Tr. 246-66].  From May 15, 2008 through September 2, 2008, Plaintiff reported a depressed mood, suicidal ideations, and a history of cutting herself, which she claimed began at the age of sixteen.  [Tr. 259-66].  Throughout her treatment at CHS, she often described stressors concerning her romantic relationships and complained of back pain and trouble sleeping.  [Tr. 246-66].  During examinations from February 12, 2009 through October 19, 2010, Plaintiff stated that she was no longer experiencing suicidal ideations and had ceased abusing drugs and alcohol and cutting herself.  [See Tr. 246-49; 253-55].  On October 19, 2010, Dr. Amir Hussaini diagnosed her with major depressive disorder, borderline personality disorder, and rule out post-traumatic stress disorder.  [Tr. 246].

7

Plaintiff also received physical medical care from CHS sporadically from 2006 to 2012. [Tr. 315-59]. In March of 2012, Plaintiff reported symptoms of low back and leg pain, which she stated she treated with Aleve. [Tr. 315]. She was assessed with chronic lumbago and fatigue and provided with a prescription to Flexeril. [Tr. 316]. Plaintiff was admitted to University of Tennessee Medical Center on November 17, 2010 for acute cholecystitis. [Tr. 455-56]. A laparoscopic cholecystectomy was performed on the same date. [Tr. 469].

Dr. Jeffrey Wright submitted a psychiatric report on January 28, 2011 finding that Plaintiff was moderately limited in her activities of daily living, social functioning, and maintaining concentration, persistence, or pace. [Tr. 267; 277]. He found that she had no episodes of decompensation of extended duration. [Tr. 277]. He assessed Plaintiff with major depressive disorder, borderline personality disorder, and rule out post-traumatic stress disorder and found her self-reported symptoms to be partially credible, as the medical evidence did "not fully support the level of severity of the . . . symptoms." [Tr. 279].

Dr. Michael Hammonds submitted a psychiatric report on March 30, 2011. [Tr. 288-305]. He concluded that Plaintiff was mildly limited in her daily activities, moderately limited in social functioning and maintaining concentration, persistence, or pace, and had no episodes of decompensation of extended periods. [Tr. 298]. He found the alleged severity of her symptoms to be partially credible. [Tr. 300]. He assessed Plaintiff with the functional capacity to perform simple two-three step commands, maintain concentration for at least two hours at a time in an eight-hour workday, interact appropriately with others in a casual setting, and adapt to routine changes and respond to directions from others with gradual introduction of workplace changes. [Tr. 304].

On June 23, 2011, Plaintiff returned to Lakeshore after reporting to the emergency room

8

for depression and complaints regarding her medications. [Tr. 306]. She stated she was depressed "over not having money or a job and being turned down for disability." [Id.]. Upon discharge she was diagnosed with a learning disorder and a Global Assessment of Functioning ("GAF") of 59. [Tr. 308]. Her condition upon discharge was noted as calm, relaxed, cooperative, and not depressed. [Id.]. Her suicide risk assessment was stated as "lowest." [Id.].

Plaintiff was admitted to Fort Loudon Medical Center on October 6, 2011 for treatment of cellulitis. [Tr. 432]. Upon discharge on October 9, 2011, she was diagnosed with right thigh MRSA cellulitis, bipolar disorder, epilepsy, currently stable, ("[l]ast epilepsy episode was at the age of 13,"), and hypokalemia. [Id.]. She was directed to maintain a regular diet, engage in daily activities as tolerated, and follow up with a primary care physician. [Id.].

### B. Other Evidence

The ALJ conducted a hearing April 24, 2012, in which the Plaintiff and Vocational Expert, Jane L. Hall, testified. [Tr. 36]. The ALJ issued an unfavorable decision on May 22, 2012. [Tr. 13-32]. The ALJ found that Plaintiff's mental impairments did not satisfy 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"), specifically 12.04, 12.06, 12.08, and 12.05C. [Tr. 20-21]. The ALJ found that Plaintiff had a RFC to perform a full range of work with several nonexertional limitations and found that although her "medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible[.]" [Tr. 21-22] (emphasis in the original). The ALJ assigned the state agency psychological consultants some weight and explained no weight was assigned to treating or examining physicians because "[t]here are no opinions from any treating or examining physicians indicating that the claimant is 'disabled' or that she has limitations greater than those

9

articulated herein." [Tr. 25-26].

## V.    POSITIONS OF THE PARTIES

The Plaintiff claims that the ALJ erred in finding she did not meet Listing 12.05C. Plaintiff argues that the ALJ did not properly apply the medical evidence to the criteria of Listing 12.05C and that such an error was not harmless.  Further, Plaintiff contends that the ALJ erred in his RFC determination.  Specifically, Plaintiff argues that the ALJ erred in not considering the opinion of examining psychologist, Dr. Brietstein, and comparing his analysis with her treatment records from Lakeshore and CHS.  Finally, Plaintiff claims that the ALJ's credibility analysis is flawed because he failed to properly consider the effect her borderline personality disorder had on her behavior.

The Commissioner responds that the ALJ properly concluded that Plaintiff's impairments do not satisfy 12.05C.  The Commissioner contends that the ALJ appropriately addressed the criteria of 12.05C and that his determination was based on substantial evidence.  The Commissioner further responds that the ALJ's failure to consider Dr. Brietstein's opinion was harmless because it occurred well before the alleged onset date and Dr. Brietstein was not a treating physician subject to controlling weight.  Finally, the Commissioner argues that the ALJ's credibility determination was based on substantial evidence.

## VI.    ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

### A.  Listing 12.05

The Court finds that the ALJ's determination that Plaintiff's mental impairments do not satisfy Listing 12.05 is based on substantial evidence.  Generally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment.  20 C.F.R. §

404.1525(c)(3). "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., 413 F. App'x 853, 854 (6th Cir. Mar. 11, 2011) (citing C.F.R. §§ 404.1525 & 404.1526). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original). The claimant has the burden of establishing that his impairment meets or equals a listed impairment. Walters, 127 F.3d at 529.

Once a plaintiff proves the existence of a severe impairment, the impairment must be analyzed under the Listings set forth in 20 C.F.R. § 404, Subpart P, Appendix 1. See Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011) (finding that "[a]n administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."). In Reynolds, the court found that the ALJ erred by failing to analyze the Plaintiff's physical impairments because the ALJ "skipped an entire step of the necessary analysis. He was required to assess whether [Plaintiff] met or equaled a Listed Impairment . . . but did not do so." Id.

Such an error is generally not considered harmless. In Reynolds, the Sixth Circuit explained that "[t]he ALJ's error was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." Id. at 416. (citing 20 C.F.R. § 404.1520(a)(4)(iii)). Without sufficient evaluation of all severe impairments under the Listings, it is impossible to determine whether the ALJ's decision was based on substantial evidence. See id. (citing Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir.1996)).

11

However, such an error will be found harmless where the ALJ has adequately considered the severe impairments elsewhere.  See Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006) (finding that "[t]he ALJ did not err by not spelling out every consideration that went into the step three determination . . . [t]he ALJ described evidence pertaining to all impairments, both severe and non-severe . . . five pages earlier in his opinion and made factual findings.  The ALJ explicitly stated that he considered the combination of all impairments even though he did not spell out every fact a second time under the step three analysis.").

In relevant part, Listing 12.05 provides the following:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function[.]

20 C.F.R. § 404, Subpart P, App. 1.

Thus, to meet or equal Listing 12.05, a claimant's impairment must satisfy "the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." Id. (12.00A) (emphasis added).  In order to satisfy the diagnostic description, "a claimant must demonstrate three factors: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations.  Hayes v. Comm'r of Soc. Sec., 357 F. App'x 672, 675 (6th Cir. 2009).

12

The Court will address each of these factors in turn.

*(1) 12.05 Diagnostic Description*

The Plaintiff contends that her academic record and IQ score from 2002 is demonstrative of subaverage intellectual functioning and adaptive skills limitations during her developmental period, i.e., before the age of 22.  [See Tr. 56-57; Doc. 16 at 14-15].  The ALJ disagreed, and the Court finds that his determination is supported by substantial evidence.

When the ALJ analyzed the Plaintiff's impairments under the Listings in 20 CFR § 404, Subpart P, Appendix 1, he stated Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04, 12.06, and or 12.08." [Tr. 20].  He went on to find that Plaintiff's impairments did not satisfy the criteria set forth in 12.05C, stating that her "representative has failed to proffer adequate support for the portion of the listing which requires evidence of manifestation of deficits in adaptive functioning during the developmental period, i.e., prior to age 22.  For instance, there are no educational records which might show a history of special education or resource classes[.]"  [Tr. 21].

The Court notes that the ALJ's statement regarding Plaintiff's academic records is in error.  Her academic records reveal that she received a special education diploma and that she was enrolled in resource English and math courses.  [See 231].  However, such an error is harmless.  Our appellate court "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two."  Hayes v. Comm'r of Soc. Sec., 357 F. App'x 672, 677 (6th Cir. 2009).  The Sixth Circuit had adopted the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM"), which "defines adaptive-skills limitations as 'concurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living,

13

social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'" Id. (quoting DSM at 49 (3d rev. ed. 1987)).

At step-three, the ALJ explained that "all of the pertinent exhibits have been reviewed and the claimant's testimony has been fully considered. The overall record fails to show any evidence of significant deficits in *daily functioning* due to either physical or mental disorders." [Tr. 19] (emphasis in the original). The ALJ went on to note Plaintiff's ability to care for her personal hygiene, prepare simple meals, clean, do laundry and household chores, mow the lawn, shop, care for pets, pay bills, count change, write poetry, and use a cellular phone. [Tr. 19-20]. Further, in step-four, when determining Plaintiff's RFC, the ALJ analyzed Plaintiff's severe impairments and corresponding medical records in depth. [See Tr. 27-35]. In considering Plaintiff's daily activities, the ALJ found that *"[f]unctionally, the claimant appears to be quite active*[,]" and again listed her abilities to perform the above-mentioned daily activities. [Tr. 24] (emphasis in the original).

The Court not only finds that this analysis is thorough and supported by substantial evidence, but concurs in the ALJ's assessment. The Court takes Plaintiff's academic records into consideration and notes that, although she was enrolled in at least two special education classes, Plaintiff's grades fail to reflect a lack of "functional academic skills." See Hayes, 357 F. App'x at 677. Plaintiff received grades of 79 in her resource English and math courses, an 84 in "tech bio," a 98 in chorus, a 75 in keyboard, and a 90 is cosmetology. [Tr. 231]. Plaintiff's academic record fails to reflect a single failing grade or any further evidence of poor academic performance. [See id.].

Further, a "low IQ score, in itself, is not evidence of 'subaverage intellectual functioning or deficits in [] adaptive functioning during [the] developmental period.'" Bailey v. Comm'r of

14

Soc. Sec., No. 1:12-CV-0140, 2013 WL 2286962, at *5 (S.D. Ohio May 23, 2013) (quoting

Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 491–492 (6th Cir. 2010). In addition to a valid

IQ score, "plaintiff must present evidence showing deficits during his developmental period."

Id. (citing Turner, 381 F. App'x at 491–492). This the Plaintiff has failed to do. Her academic

records are not conclusive of subaverage intellectual functioning or adaptive skills limitations

and the record reflects her ability to perform daily activities, as noted by the ALJ. Further, the

Plaintiff has been able to maintain work for extended periods of time and maintain relationships

with family and friends. [See Tr. 157; 50-51]. All of these factors tend towards a determination

that Plaintiff has not suffered from "subaverage general intellectual functioning with deficits in

adaptive functioning initially manifested during the developmental period." 20 C.F.R. § 404,

Subpart P, App. 1, 12.05. Therefore, the Court finds that the Plaintiff failed to meet her burden

of proof regarding the diagnostic description in 12.05 and holds that the ALJ's determination of

the same is based on substantial evidence.

*(2) Criteria to Meet 12.05C*

Because the Court finds that Plaintiff failed to prove that she met the diagnostic criteria

of 12.05, any argument that she satisfies 12.05C is moot.

Plaintiff takes issue with the ALJ's "bare conclusion" that Plaintiff fails to meet 12.05C,

[Doc. 16 at 13], yet the Court finds no such error. Although the ALJ did not discuss the

diagnostic description of 12.05 in full at step-three, his analysis addressed the Listing's criteria

and his opinion in its entirety provided adequate explanation of why Plaintiff failed to meet the

12.05. The Court finds that the ALJ's determination at step three is based on substantial

evidence and that the ALJ properly applied agency standards in arriving at his conclusion.

15

**B. Consideration of the Medical Evidence**

The Court finds that the ALJ's RFC determination is based on substantial evidence and that his evaluation of the medical evidence adhered to agency procedures. Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b).

An ALJ will consider "every medical opinion" received and will give controlling weight to the opinions of treating physicians. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

In considering non-treating physician opinions, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ must "consider findings of State agency medical and psychological consultants or other program physician, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate the consultative physician's opinion using the relevant factors in 20 C.F.R. § 404.1527(c)(2-6), the same factors used to

16

analyze the opinion of a treating physician. See 20 C.F.R. § 404.1527(e)(2)(iii); Jericol Mining, Inc. v. Napier, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); Sommer v. Astrue, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) (citation omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

Here, the Court finds that the ALJ properly considered the record as a whole and applied the factors in weighing examining and non-examining physician records. In assessing Plaintiff's mental impairments, the ALJ considered Plaintiff's treatment records at CHS and Lakeshore, noting the extensive examination records from CHS that show "no suicidal ideation or thoughts of hurting herself or others." [Tr. 23]. The ALJ further considered Plaintiff's discharge disposition after she was admitted to Lakeshore in June of 2011, noting her calm, relaxed and cooperative demeanor along with her low suicide risk assessment score. [See id.] The ALJ found that these treating records revealed "multiple psychological stressors, as opposed to an actual mental health problem." [Tr. 24].

The ALJ further considered the Plaintiff's treatment history as a whole, noting that she "has received *some* treatment for the allegedly-disabling mental health impairments . . . the record reveals that that this treatment has generally been effective in controlling the claimant's alleged symptoms." [Tr. 25]. In support of this finding, the ALJ noted her prescriptions to Celexa, Trazodone, Valium, Doxepin, and Prozac and treatment records from CHS showing that

17

"these medications have also generally been effective." [Id.].

The ALJ went on to consider Plaintiff's "significant history of polysubstance abuse," finding that her drug and alcohol abuse were "*at the very least*, a contributing factor to her overall health and psychological well-being as well as her inaccurate perception that she is somehow 'disabled and unable to work.'" [Tr. 24] (emphasis in the original). The ALJ corroborated this statement with an examination of Plaintiff's daily activities, explaining that Plaintiff was "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." [Tr. 24]. In finding Plaintiff "quite active," the ALJ specifically noted her ability to care for her personal needs, prepare simple meals, clean, do laundry, care for pets, write poetry, and use her phone to schedule medication reminders. [Id.]. The ALJ took note of Plaintiff's claims that her daily functional abilities were fairly limited and granted such allegations little weight based on the "relatively weak medical evidence and other factors discussed in this decision." [Id.].

The ALJ concluded his step-four analysis by addressing the medical records of Plaintiff's examining and non-examining physicians. The ALJ explained that even though non-examining physicians opinions "do not, as a general matter, deserve as much weight as those of examining or treating physicians, their opinions do deserve *some* weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions[.]" [Tr. 25-26]. The ALJ found the non-examining, state agency consultants' RFC determinations supported a finding of not disabled and noted their unique qualifications and training. [See id.]. The ALJ did not assign any weight to treating or examining physicians, explaining that "[t]here are no opinions from any treating or examining physicians indicating that the claimant is 'disabled' or that she has limitations greater than those articulated herein."

18

The Court finds that the ALJ's opinion, considered in its entirety, properly addressed the factors set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6). Specifically, the ALJ considered the length of treatment and frequency of examination, the amount of relevant evidence that supports the medical evidence, the state agency consultants' opinions consistency with the record as a whole, the state agency consultants' specialization and training, and other factors which tended to support or contradict the medical evidence such as Plaintiff's drug and alcohol abuse, work history, and daily activities.

Further, the Court concurs with the ALJ's notation that the record is absent a treating or examining physician medical opinion and finds that the ALJ properly addressed and considered the Plaintiff's treatment and examination records in lieu of such opinions. See Pedigo v. Astrue, 1:09-CV-93, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009) (additional citation omitted) (explaining that a medical opinion is not just a diagnosis but requires an actual opinion of functionality "because disability is determined by reference to the functional limitations imposed by a condition, not the condition itself.") (citing Foster v. Bowen, 853 F.2d 483, 488–89 (6th Cir. 1988); see also 20 C.F.R. § 404.1527(a)(2) (defining a medical opinion as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

The Plaintiff contends that the ALJ specifically erred by failing to take into consideration the examination records and diagnosis of Dr. Brietstein. [See Doc. 16 at 10-11]. The Court disagrees for two reasons. First, Dr. Brietstein's analysis was conducted on July 3, 2002, eight years prior to Plaintiff's alleged onset date of July 21, 2010. [See Tr. 154]. Between 2002 and

19

2010, Plaintiff worked as a cashier and factory laborer. [Tr. 157]. During the administrative hearing, the Plaintiff explained that she quit her job as factory worker on her alleged onset date due to the onset of her conditions. [See Tr. 41-42]. The Court finds that a psychological examination, conducted eight years prior the alleged onset date and preceding a period in which Plaintiff sustained substantial gainful activity, is irrelevant to the Plaintiff's application. See Davis ex rel. Smith v. Comm'r of Soc. Sec., No. 1:08-CV-00291, 2009 WL 2884142, at *10 (S.D. Ohio Sept. 1, 2009) (finding that a physician's opinion "that occurred nine months prior to the alleged onset date . . . was not relevant to assessing Plaintiff's disability claim.").[1]

Furthermore, the Court finds that even if the ALJ erred in considering Dr. Brietstein's examination records, such an error would be harmless because Dr. Brietstein's opinion does not necessarily weigh in favor of finding the Plaintiff disabled. See Ehrob v. Comm'r of Soc. Sec., No. CIV. 09-13732, 2011 WL 977514, at *7 (E.D. Mich. Mar. 17, 2011) (explaining that the "older medical evidence supports the ALJ's decision. Thus, it is not prejudicial to the Plaintiff that the ALJ did not appear to rely upon it for his decision, and the Magistrate's reliance upon it does not warrant reversal."). Dr. Brietstein found that Plaintiff suffered from a variety of mental disabilities and noted that she would have "difficulty handling jobs." [Tr. 313]. However, at no point did Dr. Brietstein conclude that Plaintiff was so severely impaired as to substantiate a

---

[1] The Court notes that not all medical evidence obtained prior the alleged onset date is "necessarily irrelevant." See DeBoard v. Comm'r of Soc. Sec., 211 F. App'x 411, 414 (6th Cir. 2006) ("We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence,* may help establish disability.") (emphasis in the original). However, courts have found such evidence irrelevant when the records substantially outdated the alleged onset date. See 20 C.F.R. § 404.1512 (d)(2) ("By 'complete medical history,' we mean the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application."); Davis ex rel. Smith, 2009 WL 2884142, at *10 (discounting an opinion because it was obtained nine months prior to the alleged onset date).

finding of complete disability. In fact, Dr. Brietstein noted that she would "be a reasonable candidate for beauty or cosmetology school" and that "she has for the most part been over-protected and coddled by her family[.]" [Id.]. Therefore, the Court finds that any lack of consideration of Dr. Brietstein's examination was not in error.

Plaintiff's argument that the ALJ erred in his consideration of the medical evidence is not well-taken. The Court finds that the ALJ properly considered the medical evidence as a whole and that his RFC assessment is supported by substantial evidence.

### C. Assessing Plaintiff's Credibility

The Court further finds that there is substantial evidence to uphold the ALJ's RFC determination based on his consideration of the Plaintiff's credibility. An ALJ may consider the claimant's credibility when determining the basis of pain symptoms. See Walters, 127 F.3d at 531 (explaining that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant."). The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. However, the ALJ's finding must be supported by substantial evidence. Id. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or

whether the objectively established medical condition is of such a severity that it can reasonably

be expected to produce the alleged disabling pain, the ALJ must consider the following factors:

(i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii)

precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any

medication taken to alleviate pain or other symptoms; (v) treatment, other than medication,

received or implemented for relief of pain or other symptoms; (vi) any other measures besides

medical treatment that are used or were used to relieve pain or other symptoms; (vii) other

factors concerning functional limitations and restrictions due to pain or other symptoms. Soc.

Sec. Rul. 96-7p, 1996 WL 374186, at *3; 20 C.F.R. § 404.1529(c)(3). Although the ALJ is not

required to address every factor, his "decision must contain specific reasons for the finding on

credibility, supported by the evidence in the case record, and must be sufficiently specific to

make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL

374186, at *3.

The Sixth Circuit has emphasized that "[t]his is a highly deferential standard. As a result,

substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the

degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree

which *could* satisfy a reasonable fact finder.'" Claiborne-Hughes Health Ctr. v. Sebelius, 609

F.3d 839, 843-44 (6th Cir. 2010) (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522

U.S. 359, 377 (1998) (emphasis in the original)).

Here, the ALJ found that although the Plaintiff's impairments could cause her alleged

symptoms, her "statements concerning the intensity, persistence, and limiting effects of these

symptoms are not credible to the extent they are inconsistent with the above residual functional

capacity assessment." [Tr. 22]. Plaintiff takes issue with this assessment, specifically arguing that the ALJ failed to properly consider her borderline personality disorder and resulting symptomatology in assessing her credibility. [See Doc. 16 at 15-18]. The Court disagrees.

The ALJ is not hemmed in by the symptoms of a severe impairment, but must assess credibility based on the evidence in its entirety. See Tyra v. Soc. Sec. Admin., 896 F.2d 1024, 1030 (6th Cir. 1990) (explaining that "the ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict" the alleged severity of symptoms). In Tyra, the Sixth Circuit found that the plaintiff's subjective complaints were properly dismissed "because the medical and testimonial evidence failed to confirm the severity of the pain." Id. The ALJ made similar findings here and the Court is equally persuaded. The ALJ compared Plaintiff's self-reported symptoms to her treatment records at CHS and Lakeshore, noting the inconsistencies in her statements regarding frequent suicidal and self-mutilation ideations with her treatment reports from January 2010 through January 2012 reflecting "no suicidal ideation or thoughts of hurting herself or others." [See Tr. 23]. The ALJ went on to consider the Plaintiff's drug and alcohol abuse, daily activities, treatment and medication history, and the inconsistencies in her various statements made in examinations, function reports, disability reports, and testimony at the administrative hearing, finding her self-reported symptoms inconsistent with the record as a whole. [Tr. 23-25].

Although an ALJ's credibility determination is entitled to deference, the assessment "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. In this case, the ALJ has met that burden. It is clear

23

from his decision that the ALJ weighed the evidence in its entirety in determining that the alleged severity of Plaintiff's symptoms was not credible. The ALJ properly considered the factors set forth in Social Security Ruling 96-7p and thoroughly explained the reasons for his decision. Therefore, the Court finds that the ALJ's determination of credibility is based on substantial evidence and shall be upheld.

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion For Summary Judgment **[Doc. 15]** be **DENIED**, and that the Commissioner's Motion for Summary Judgment **[Doc. 20]** be **GRANTED**.

Respectfully submitted,

United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).